**SO ORDERED.**

**SIGNED this 14 day of May, 2010.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

LO'R DECKS AT CALICO JACKS, LLC,           CHAPTER 11
                                           CASE NO. 09-09614-8-RDD
          DEBTOR

**ORDER GRANTING MOTION TO DISMISS CASE**

Pending before the Court is the motion of NewBridge Bank f/k/a Lexington State Bank ("NewBridge") to dismiss or convert (the "Motion to Dismiss") [Docket Entry 141] the above captioned bankruptcy case of LO'R Decks at Calico Jacks, LLC (the "Debtor") pursuant to 11 U.S.C. § 1112(b). This matter came on at a hearing before the above signed United States Bankruptcy Judge for the Eastern District of North Carolina on April 28, 2010.

The issue before the Court is whether the Debtor's case should be dismissed for cause pursuant to 11 U.S.C. § 1112(b)(4)(E) based on the failure of the Debtor to comply with previous orders of this Court.

**BACKGROUND**

On November 2, 2009 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor remains in possession of its assets and continues to operate its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Court has jurisdiction over the Motion to Dismiss pursuant to 28 U.S.C. § 1334. Such jurisdiction is core pursuant to 28 U.S.C. § 157(b)(2). Venue of the bankruptcy case and the Motion to Dismiss before the Court are appropriate under 28 U.S.C. §§ 1408 and 1409.

The Debtor owns and operates a marina and related facilities located on waterfront property in Carteret County. The Debtor's operations include operating a small motel, a convenience store, and a "ferry service." The ferry service provides transportation to individuals to and from Cape Lookout National Seashore on 24 foot open skiffs. In addition to these operations, the Debtor has plans to complete construction of 39 wet boat slips that it intends to sell.

Approximately two and one-half months after the Petition Date, on January 26, 2010, the Debtor filed an Emergency Motion to Use Cash Collateral [Docket Entry 69] to permit it to use the cash collateral of NewBridge.[1] NewBridge objected to the Debtor's use of its cash collateral [Docket Entry at 76].

NewBridge asserts that it is a secured creditor of the Debtor based on its proof of claim filed in this case. As of the date of the hearing, no party has contested NewBridge's secured position.

---

[1] Although the Bankruptcy Administrator did not file his own Motion to Dismiss, he supports the Motion of NewBridge Bank and remarked to the Court that, in addition to the Debtor's failure to comply with the orders of this court, cause for dismissal exists under Section 1112(b)(4)(D) as the Debtor's use of cash collateral from November 2, 2009 (the "Petition Date") through the initial cash collateral hearing was unauthorized and that such use of cash collateral substantially harmed NewBridge's secured position.

2

The Court conducted a hearing on the cash collateral motion on February 2, 2010. At that hearing, the Debtor asserted that it needed the use of cash collateral to run its seasonal business and to give it time to finalize the financing required to complete construction of the 39 boat slips. The Debtor represented to the Court that it had obtained a commitment for such financing and that a number of the slips were presold. Over the objection of NewBridge, the Court granted the Debtor interim use of NewBridge's cash collateral provided that the Debtor complied with certain conditions as set forth on the record by the Court. The Order allowing the interim use of cash collateral was entered on February 10, 2010 [Docket Entry 83]. In addition to requiring that the Debtor make an adequate protection payment to NewBridge, the Court required the Debtor to:

    a. Provide the Court, the Bankruptcy Administrator, and NewBridge a copy of all the Debtor's pending contracts for the sale of boat slips on or before March 18, 2010; and

    b. File with the Court on or before the hearing scheduled on March 18, 2010, a motion for approval of post-petition financing in accordance with § 364 of the Bankruptcy Code and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure.

On March 18, 2010, the Court held a further hearing on the Debtor's use of NewBridge's cash collateral. The Court again granted the Debtor the continued interim use of NewBridge's cash collateral on the condition that, among other things, the Debtor make a series of monthly adequate

protection payments in the amount of $18,903.98, with the first payment due to NewBridge by April 10, 2010. The order approving the Debtor's continued use of cash collateral was entered on March 31, 2010 (the "Second Interim CCO") [Docket Entry 124].

On April 9, 2010, the Debtor filed an Emergency Motion to Set Aside the Second Interim CCO stating that it was unable to make the April 10, 2010 adequate protection payment to NewBridge as required by the Second Interim CCO. The Debtor requested that the Court withdraw the Second Interim CCO in its entirety [Docket Entry 139]. On April 9, 2010 and in response to the Debtor's Motion to Set Aside the Second Interim CCO, NewBridge filed its Motion to Dismiss. Upon request of the parties, the Court agreed to hear both motions on an expedited basis on April 15, 2010 in Greenville, North Carolina.

At the hearing on April 15, 2010, a representative of the Debtor testified that it would be able to make an adequate protection payment later in the month. The Court modified its Second Interim CCO and permitted the Debtor to delay the April 10, 2010 adequate protection payment due to NewBridge until April 27, 2010 at 5:00 p.m. An order was entered on April 20, 2010 confirming the Court's ruling (the "CC Modification Order") [Docket Entry 170], and requiring that the Debtor make an adequate protection payment to NewBridge in the amount of $18,903.98 by "**5:00 p.m. on April 27, 2010.**" (emphasis shown in the CC Modification Order). Based on its decision to modify the Second Interim CCO, the Court continued the Motion to Dismiss to April 28, 2010, the same date set by the Court to hear the Debtor's Motion for Approval of Post-petition Financing.

## DISCUSSION

The Debtor has not complied with the terms of the First Interim CCO or with the Second Interim CCO, as modified by the CC Modification Order. The First Interim CCO required that by

4

March 18, 2010 the Debtor provide its contracts for the sale of the boat slips to NewBridge, the Court, and the Bankruptcy Administrator. Furthermore, the Debtor was required to file its motion for approval of post-petition financing in compliance with Rule 4001(c). The Debtor has failed to comply with either of these provisions.

Despite the Debtor's assertion that it has seven binding contracts for the sale of boat slips, the Debtor presented no sales contracts to NewBridge. Rather, the only documents the Debtor delivered are reservation letters called "First Refusal For Membership For Calico Jacks." The reservation letters provide a potential purchaser with the opportunity to purchase a membership that would entitle the purchaser to the use of a wet boat slip or dry storage space. Pursuant to the letter, the Debtor has no obligation to develop the project and the potential purchaser has the option for a full refund of his or her $1,000.00 deposit. The reservation letters do not contain a description of which boat slip the purchaser reserved, the purchase price of the membership interest, or the time frame as to when the project will be sufficiently complete to allow for the execution of a binding contract. If the purchaser elects not to purchase a slip at the time a binding contract is presented, the reservation letter permits him or her to request a refund of the deposit.

Pursuant to the First Interim CCO, the contracts - as it turned out, the reservation letters - were to be provided to specific parties by March 18, 2010. These reservation letters were not produced to NewBridge by that deadline. The Debtor produced five (5) reservation letters at the hearing on March 18, 2010. It produced another reservation letter at the hearing on April 15, 2010, and did not produce the final reservation letter until the April 28, 2010 hearing.[2] Therefore, based

---

[2] There was no proffer as to whether the reservation letters were delivered to the Bankruptcy Administrator.

on the untimely delivery of the contracts to NewBridge, the Debtor failed to comply with paragraph 5 of the decretal section of the First Interim CCO.

Furthermore, the Debtor failed to comply with paragraph 4 of the decretal section of the First Interim CCO requiring that the Debtor submit a motion to obtain approval of post-petition financing in compliance with Section 364 of the Bankruptcy Code and Rule 4001(c).

The requirements of Rule 4001(c) address the need for the Court and affected parties to be able to decipher relevant terms of post-petition financing proposed under Section 364.  The rule requires that a motion for approval of post-petition financing specifically identify and delineate certain material provisions for all to see.  More specifically, the rule requires that a copy of the proposed credit agreement must always accompany the motion.  Rule 4001(c)(1)(A). *See also* 9 Collier on Bankruptcy ¶ 4001.06[2][a] (15th Ed.) (*citing* 1987 Amendment Advisory Committee Note).  In addition to the credit agreement, a motion shall include a copy of the proposed order. Rule 4001(c)(1)(A).

With regard to the motion itself, it should set forth the "amount and type of credit to be extended, the name and address of the lender" and "the efforts to obtain credit from other sources."[3] 9 Collier on Bankruptcy ¶ 4001.06 [2][a].  Furthermore, the motion "shall describe the nature and extent" of whether the movant is seeking approval of any of eleven enumerated provisions set forth in the Rule.  *See* Rule 4001(c)(1)(B)(i – ix).  The specific requirements set forth in Rule 4001 are

---

[3] Pursuant to Section 364(d)(1)(A), a court may only authorize superpriority over other secured creditor's liens if "the trustee [Debtor] is unable to obtain such credit otherwise…" The First DIP Financing Motion uses the specific language from the statute that the Debtor is unable to obtain credit other than the superpriority credit. However, the First DIP Financing Motion does not substantiate this statement with any factual assertions. The Court notes the Debtor has the burden of demonstrating unsuccessful efforts to obtain less onerous financing. *SunTrust Bank, N.A. v. Den-Mark Construction, Inc.,* Case No. 5:08-CV-529-F (E.D.N.C. April 7, 2009)(J. Fox).

intended "to enhance the ability of the court and interested parties to find and evaluate those provisions." *See* 2007 Amendment Advisory Committee Note to Rule 4001.

The Debtor has filed two motions for approval of post-petition financing and an amendment to its original motion. The initial motion and amendment sought approval of financing from Greystone Real Estate Group LLC ("Greystone"). The subsequent motion sought approval of post-petition financing by Seven Lands LLC ("Seven Lands"). Neither the motions, nor the amendment, comply with the requirements set forth in Rule 4001(c).

The Debtor filed its first motion for post-petition financing on March 18, 2010 [Docket Entry 102] (the "First DIP Financing Motion") and amended the First DIP Financing Motion on March 31, 2010 (the "Amended DIP Financing Motion") [Docket Entry 127]. Other than a few terms, such as a change in the proposed interest rate and the proposed repayment schedule, the First DIP Financing Motion and Amended DIP Financing Motion are nearly identical. Each is accompanied by only a one page "Letter of Intent" from a group called Greystone advising the Debtor that Greystone has a "client" willing to accept the Debtor's proposal for one of its client's to provide funding for completion of the boat slips and requesting a first lien on the Debtor's real property upon funding of the loan. It is unclear whether Greystone or its client would be the lien holder.

These "Letters of Intent" do not purport to be and are not the sort of credit agreement required by Rule 4001(c) as they fail to include material provisions of a credit agreement. The information provided in these letters is insufficient for a court or other lien holders to even assess the viability of the lender – Greystone's "client" has not even been disclosed. Therefore, the Debtor has not complied with the requirements of Rule 4001(c) based on its failure to include a credit agreement with the motions.

Neither the First DIP Financing Motion nor the Amended DIP Financing Motion contained a proposed form of order as required by Rule 4001(c)(1). Furthermore, neither the First DIP Financing Motion nor the Amended DIP Financing Motion set out such basic provisions[4] as what constitutes an event of default, the conditions to funding, the name and address of the lender, or other material provisions required by Rule 4001(c)(1)(B). More specifically, the letters attached to the motion are ambiguous at best. The letters of intent provide that the parties agree "that the balance of the note due will be renewed for an additional 6 months by a payment of [a] 5% fee of the unpaid balance." However, the letters fail to provide when the five percent (5%) renewal fee is due should the balance of the note not be paid as agreed, if interest will accrue during such time period, the rate of interest during the extension, and if monthly payments are to be made during the six month extension. Therefore, based on their deficiencies,[5] neither the First nor the Amended DIP Financing Motion comply with Rule 4001. As such, the Debtor has failed to comply with specific requirements of the First Interim CCO.

---

[4] Rule 4001(c)(1)(B) specifically provides that the "motion" shall consist of or begin with a concise statement of the relief requested that lists or summarizes, and sets out the "location within relevant documents of, all material provisions of the proposed credit agreement and order, including interest rate, maturity, events of default, liens, borrowing limits and borrowing conditions." The First DIP Motion and Amended DIP Motion are devoid of this information. The motion fails to address whether any of the eleven enumerated provisions set forth in Rule 4001(c)(1)(B)(i-ix) are applicable to the financing arrangement. Instead, attached to pleadings are the letters which contain only a portion of the required information.

[5] Furthermore, the Court notes that the Debtors failed to properly serve the First DIP Financing Motion and the Amended DIP Financing Motion on all of the parties required to be served in Rule 4001(c)(1)(C). Subsection (C) requires that if a committee of unsecured creditors is not appointed, service must be made on the list filed under Rule 1007(d). Rule 1007(d) is the List of Creditors Holding 20 Largest Unsecured Claims. Based on the Certificate of Service filed with each motion, the Debtor failed to serve Joseph A. Pittman with a copy of either motion. Mr. Pittman is listed as an unsecured creditor, who holds an unsecured claim in the amount of $20,000 based on a promissory note, and is on the List of Creditors Holding Largest Unsecured Claims filed by the Debtor on November 20, 2009. Based on this filing, Mr. Pittman was entitled to receive notice of the proposed financing motions pursuant to Rule 4001(c)(1)(C).

Approximately four weeks later on April 26, 2010, just one day prior to the scheduled hearings on the Motion to Dismiss, the First DIP Financing Motion, and the Amended DIP Financing Motion, the Debtor filed what is captioned as its Second Amended Motion for Order Authorizing Post-Petition Financing Arrangement from Seven Lands, LLC (the "Seven Lands Motion") [Docket Entry 173]. It is unclear whether this motion is a second amendment to the First DIP Financing Motion or a new motion. Pursuant to the Seven Lands Motion, the Debtor is now seeking approval of financing by Seven Lands LLC ("SL") and SL does not appear to be related to Greystone or Greystone's client as referenced in the letters of intent accompanying the First DIP Financing Motion and Amended DIP Financing Motion.[6] If the Seven Lands Motion is, in fact, a new motion, it would not be properly before the court on April 26, 2010 as a hearing **must not** be commenced within fourteen (14) days of the motion unless specifically requested by the motion. Rule 4001(c)(2). (emphasis added).

Even if the Court considered the Seven Lands Motion as an amendment to the initial financing motions, the Seven Lands Motion still fails to meet the requirements of Rule 4001(c). Although a longer and more complete "Commitment Letter" accompanies the Seven Lands Motion, the Commitment Letter is still not the credit agreement required by Rule 4001(c)(1)(A). The Commitment Letter specifically states that a loan agreement (another name for a credit agreement) is yet to be developed and, that once developed, SL has the sole discretion to determine whether it is acceptable. The Seven Lands Motion is also not accompanied by a form of proposed order. Of grave concern to the Court is that the commitment letter is not executed by SL. Therefore, without

---

[6] The Seven Lands Motion, as filed, fails to disclose that members of Seven Lands, LLC are all principals in the accounting firm employed by the Debtor in this case. Pursuant to Section 327, such individuals must be disinterested.

providing a copy of a credit agreement and proposed order, the Debtor has failed to comply with Rule 4001(c).

Substantively, the motion does not set forth all the material provisions such as events of default and borrowing conditions.[7] For example, although Seven Lands Commitment Letter mentions in numerous places the adverse consequences to the Debtor upon an event of default, an event of default is neither identified nor defined in the Seven Lands Motion or in the commitment letter. Furthermore, the Debtor has failed to show how it intends to fund the commitment fee as it is due immediately upon approval of the financing, yet the loan transaction itself is subject to conditions and approvals by SL. A party in interest or the Court cannot look at the Seven Lands Motion and understand the terms and requirements of the transaction.

The motion itself is ambiguous. It provides that "NewBridge is adequately protected because the Seven Lands Commitment Letter provides that New Bridge is to receive 50% of the net proceeds of all sales of wet boat slips after completion of the marina project." Seven Lands Motion, ¶ 12. Arguably, such provision could be interpreted to mean that NewBridge would only receive a percentage payment of all sales (including sales made before the completion of the project) once the marina project is complete. In the meantime, it appears as if the Debtor is asking NewBridge to wait indefinitely for a payment. Interpreted another way, the language may require a percentage payment to NewBridge only for the slips that are sold after the project is complete and, should the Debtor sell

---

[7] Rule 4001(c)(1)(B) specifically provides that the "motion" shall consist of or begin with a concise statement of the relief requested that lists or summarizes, and sets out the "location within relevant documents of, all material provisions of the proposed credit agreement and order, including interest rate, maturity, events of default, liens, borrowing limits and borrowing conditions." The Seven Lands Motion is devoid of this information. The Seven Lands Motion also fails to address if any of the enumerated provisions set forth in Rule 4001(c)(1)(B)(i-xi) are applicable in the proposed transaction. Instead, attached to the pleading is the commitment letter which contains only a portion of the required information.

any slips prior to completion, payment to NewBridge is not required. Such language could also mean that NewBridge would receive payments based on the sale of each wet boat slip as such slips are sold during any stage of the project.[8]

Furthermore, the Debtors assert that HH1, LLC, a secured creditor of the debtor, is adequately protected. Paragraph 13 of the Seven Lands Motion provides that "because the value of the Marina site after completion of the marina project will exceed the amounts owed to Seven Lands and to HH1[,]" HH1, LLC is adequately protected. However, the motion fails to address how the senior lien held by New Bridge will impact HH1 after SL obtains a first priority lien.

The Seven Lands Commitment Letter provides that SL is entitled to 100% of the net asset sale proceeds but that SL will accept a payment of 40% of any net sales proceeds if the Debtor pays 50% of the net proceeds to NewBridge if the Debtor is not in default. There are no projections or information as to what the Debtor projects to be the net profits from the sale of each boat slip.

The Seven Lands Commitment Letter requires that the total amount of the construction contract to complete the marina must not be more than $276,000. The Debtor failed to file any supporting documentation with its motion that such amount is an appropriate amount for the completion of the project. Furthermore, SL has an unfettered right to approve the construction contract.

---

[8]The Court also questions how the slips will be sold since the First Refusal For Membership documents provided to NewBridge reference the possibility that what will be sold is the exclusive right to use a designated boat slip through membership ownership.

Similar to the First DIP Financing Motion and Amended DIP Financing Motion, the Seven Lands Motion[9] also fails to comply with Rule 4001(c) and, therefore, fails to comply with the First Interim CCO.

In addition to the Debtor's failure to comply with the terms of the First Interim CCO, the Debtor also failed to comply with the Court's Second Interim CCO, as modified by the CC Modification Order. The Debtor failed to tender the adequate protection payment to NewBridge by the deadline established in the CC Modification Order.

At the hearing on April 28, 2010, counsel for the Debtor stated that the Debtor brought him a check in the amount of $18,903.98 on April 27, 2010, the day prior to the hearing, so that "we could wire the money or send the money to NewBridge." Counsel stated that he had a 10:00 a.m. hearing on April 27, 2010 in Wilson that he did not know was off of the calendar and that he also had a second hearing before this Court that was not completed until 6:00 p.m. He stated that he did not arrive back to his office until 8:30 p.m. on April 27, 2010. Counsel stated that he was unable to get the check to counsel for NewBridge by the deadline in the Modification CC Order. Upon inquiry by the Court, counsel stated that check was drawn on the account of LO'R Decks at Calico Jacks LLC and that it was not certified. He stated that counsel for NewBridge could confirm the funds were available in the account and that the previous check had cleared. However, counsel for NewBridge informed the Court that the previous check was drawn on counsel's trust account and not the account of the Debtor. She said that she provided counsel for the Debtor wiring instructions and that Debtor's counsel should have known that upon accepting the check the day before the

---

[9] As was the case with the First DIP Financing Motion and Amended DIP Financing Motion, the Debtor failed to serve Mr. Pittman with a copy of the Seven Lands Motion. Therefore, service of this motion was not proper. Rule 4001(c)(1)(C).

12

hearing, payment was not going at arrive to the bank by 5:00 p.m. on April 27, 2010, to be in compliance with the First Interim CCO. Counsel for the Debtor stated he preferred for his clients to work directly with him and not with opposing counsel. Therefore, counsel for the Debtor elected to take possession of the check rather than request his client to wire the funds to NewBridge on the due date.

Counsel for the Debtor stated that counsel for NewBridge refused to accept the check on the morning of April 28, 2010. The Court would be remiss if it failed to recognize that counsel should have known that he was scheduled to be away from his office at hearings scheduled in Wilson on April 27, 2010 when he took delivery of the check. Either Debtor's counsel or his client should have ensured the timely receipt of funds by NewBridge. The Court questions, due to the amount of the check, whether the funds would have been immediately available such that counsel could have wired the funds to comply with the order of this Court even if counsel had been in his office the afternoon the payment was due. As it stands, the adequate protection payment required by the CC Modification Order was not been made timely and therefore, the Debtor has failed to comply with this Court's order.

Section 1112(b)(1) states that the Court *shall* dismiss a case for cause upon request of a party in interest and after notice and a hearing "absent unusual circumstances specifically identified by the court." Section 1112(b)(4)(E) further provides that "cause" includes "failure to comply with an order of the court."

Based on the specific facts set forth above, the Debtor has failed to comply with the orders of this Court. Therefore, cause exists to dismiss this case. There has been no proffer of evidence or argument by counsel that unusual circumstances exist that would warrant this case remaining in a

chapter 11 reorganization. Therefore, pursuant to Section 1112(b), the Motion to Dismiss filed by NewBridge is **GRANTED**.

**SO ORDERED.**

**END OF DOCUMENT**